Lee I. Iglody, Esq.
Nevada Bar No. 7757
IGLODY LAW PLLC
2580 St Rose Pkwy., Suite 330
Henderson, Nevada 89074
Tel: (702) 425-5366
Email: Lee@Iglody.com

Steven M. Warshawsky, Esq.
*Pro Hac Vice*
WARSHAWSKY LAW FIRM
118 North Bedford Road, Suite 100
Mount Kisco, New York 10549
Tel: (914) 864-3353
Email: smw@warshawskylawfirm.com
*Attorneys for Plaintiff Michael McCreary*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| MICHAEL MCCREARY,<br><br>        Plaintiff,<br><br>v.<br><br>SUPREME COURT OF NEVADA,<br><br>        Defendant. | **Case No. 23-CV-414**<br><br>**PLAINTIFF'S POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DIMISS PURSUANT TO FRCP 12(b)(6)**<br><br>**ORAL ARGUMENT REQUESTED** |

Plaintiff Michael McCreary, by his undersigned attorneys, respectfully submits this memorandum of points and authorities in opposition to Defendant's motion to dismiss pursuant to FRCP 12(b)(6), filed November 6, 2023 (ECF No. 17). For the reasons set forth below, the motion should be DENIED.

1

## PRELIMINARY STATEMENT

This is an action for religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, on the grounds that Defendant failed to reasonably accommodate Plaintiff's sincerely held religious objections to a mandatory COVID-19 vaccination policy and as a result illegally terminated his employment. Defendant has moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), essentially arguing the merits of Plaintiff's claim, which is improper on a motion to dismiss. When the allegations in the Complaint are presumed to be true and reasonable inferences are drawn in Plaintiff's favor, as they must be on a motion to dismiss, Plaintiff plausibly alleges a bona fide religious objection to Defendant's COVID-19 vaccination policy and Defendant cannot establish its affirmative defense that granting Plaintiff's religious exemption would have caused an undue hardship. Accordingly, Defendant's motion should be denied.

## STATEMENT OF FACTS

Plaintiff's Complaint provides a detailed chronology of the events in this case. For purposes of the present motion, the essential facts are as follows:

Plaintiff Michael McCreary was employed by the Nevada Supreme Court (NVSC) as a full-time court marshal from August 31, 2020, until his wrongful termination on January 28, 2022. ECF No. 1 ¶¶ 14-16 (Complaint). At all relevant times, McCreary was qualified for his position and performed his duties in a satisfactory manner. ECF No. 1 ¶ 20.

On November 3, 2021, NVSC implemented a mandatory COVID-19 vaccination policy for all court employees.  ECF No. 1 ¶ 23.  The deadline for providing proof of vaccination was January 28, 2022 – nearly three months later.  ECF No. 1 ¶ 24.  When first announced, the policy included religious exemptions.  ECF No. 1 ¶ 26.

McCreary is a baptized Christian.  ECF No. 1 ¶ 32.  Along with his wife and children, he attends and participates in church services weekly.  ECF No. 1 ¶ 32.  On November 16, 2021, McCreary submitted a written request for a religious exemption to the court's COVID-19 vaccination policy.  ECF No. 1 ¶ 33.

In his three-page letter addressed to the Honorable Justices of the Supreme Court, McCreary explained, *inter alia*, that "I hold God's Word to the highest standard and authority in my life"; "Because of my faith, I take the physical and spiritual body God has given me seriously"; and "Because God cares how I live my life, because God cares about what goes into my body and He cares about the decisions I make, I can't do something I don't believe is one hundred percent right.  I am being asked to compromise my faith and what God calls me to do by mandating me to do something I don't believe is right."  McCreary supported his letter with numerous citations to holy scripture, including 1 Corinthians 6:19-20 ("your body is a temple of the Holy Spirit within you").  McCreary closed his letter: "Based on my sincerely held religious convictions described above, I respectfully request a religious exemption from the COVID vaccine mandate."  ECF No. 1 ¶ 35 and ECF No. 1-7 (Exhibit G) (copy attached hereto for the Court's convenience).

McCreary's letter articulated a sincerely held religious objection to the court's COVID-19 vaccination policy.  ECF No. 1 ¶ 36.

NVSC failed to engage in a good faith interactive process with McCreary regarding his request for a religious exemption.  ECF No. 1 ¶ 37.  No one from the court responded to McCreary's letter.  ECF No. 1 ¶ 38.  No one from the court asked McCreary for more information or more documentation about his request for a religious exemption.  ECF No. 1 ¶ 40.

McCreary continued to work full-time while his request for a religious exemption was pending.  ECF No. 1 ¶ 44.

On December 28, 2021, NVSC amended its COVID-19 vaccination policy to remove religious exemptions.  ECF No. 1 ¶ 45.[1]  On the same date, McCreary was notified by email and letter about this policy change – which effectively denied his request for a religious exemption – and he was instructed "to provide proof on or before Friday, January 28, 2022, that you have been fully vaccinated."  ECF No. 1 ¶¶ 46, 48, 50.  He was further instructed "[u]ntil you are fully vaccinated, please continue to adhere to the requirements of weekly testing for COVID-19, daily health screenings when entering court facilities, wearing a mask and social distancing."  ECF No. 1 ¶ 50.

On January 18, 2022, McCreary received an email and letter giving him final notice regarding the court's COVID-19 vaccine mandate.  ECF No. 1 ¶¶ 59, 61, 63.

---

[1] Defendant does not argue in its motion to dismiss that it was not required under Title VII to grant religious accommodations to employees who otherwise qualified.

When McCreary continued to abide by his sincerely held religious objections, his employment was terminated on January 28, 2022. ECF No. 1 ¶ 64.

## STANDARD OF REVIEW

The "plausibility" standard of review applicable to the present motion is well established. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) (following *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *Hansen v. Musk*, 653 F. Supp.3d 832, 836 (D. Nev. 2023) (same). Importantly, "[o]n a motion to dismiss, the court presumes that the facts alleged by the plaintiff are true" and "draw[s] all reasonable inferences from the complaint in the [plaintiff's] favor." *Brown v. Electronic Arts, Inc.*, 724 F.3d 1235, 1247-48 (9th Cir. 2013) (citations omitted).

## LEGAL FRAMEWORK

Title VII declares it unlawful, *inter alia*, "for an employer . . . to discharge any individual . . . because of such individual's . . . religion . . . ." 42 U.S.C. § 2000e-2(a)(1). Title VII defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 2000e(j). As the Supreme Court recognized nearly 50 years ago:

5

"The intent and effect of this definition was to make it an unlawful employment practice . . . for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees . . . ." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977); *see also Groff v. DeJoy*, 600 U.S. 447, 453-54 (2023) ("Title VII of the Civil Rights Act of 1964 requires employers to accommodate the religious practice of their employees unless doing so would impose an undue hardship on the conduct of the employer's business.") (internal quotation marks and citation omitted).

To plead a prima facie case of failure to accommodate under Title VII, a plaintiff must show that "(1) he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected him to an adverse employment action because of his inability to fulfill the job requirement." *Berry v. Department of Soc. Servs.*, 447 F.3d 642, 655 (9th Cir. 2006) (internal quotation marks and citation omitted). "Once a prima facie showing has been made, the burden shifts to the [defendant] to show that it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Id.* (internal quotation marks and citation omitted).

# ARGUMENT

### 1. Plaintiff Plausibly Alleges A Claim For Failure to Accommodate Under Title VII.

In the Complaint, Plaintiff plausibly alleges a claim for failure to accommodate under Title VII.

Plaintiff alleges: McCreary was a covered employee under Title VII. ECF. No. 1 ¶¶ 3, 74. NVSC was a covered employer under Title VII. ECF No. 1 ¶¶ 5, 75. McCreary has a sincerely held religious objection to the court's COVID-19 vaccination policy. ECF No. 1 ¶¶ 35-36. He informed the court about his religious objection to the policy. ECF No. 1 ¶¶ 33,35. And he was terminated for failing to comply with the policy. ECF No. 1 ¶¶ 63-64. These allegations are "plausibly suggestive of a claim entitling the plaintiff to relief." *Moss*, 572 F.3d at 969; *Hansen*, 653 F. Supp.3d at 836. Nothing more is required at the 12(b)(6) stage.

District courts in this circuit have denied motions to dismiss based on similar allegations. *See, e.g.*, *Camp v. L.A. Arena Co.,* No. EDCV 22-2220-JGB, 2023 WL 4680797, at *7 (C.D. Cal. June 15, 2023) ("Because Plaintiff alleged both that his religion prevented him from meeting the requirements of Defendants' [COVID-19 vaccination] Policy – at least without some reasonable accommodation – and that Defendants terminated his employment because of Plaintiff's inability to fulfill this job requirement, Plaintiff has pled enough facts to support his failure to accommodate claims."); *Morris v. Asante Health Sys.*, No. 1:22-CV-01707-CL, 2023 WL 3766615, at *3 (D Or. May 17, 2023) ("These allegations sufficiently allege that Plaintiff informed Asante of her objection to the vaccine for religious reasons, that

Asante approved of an exemption, but that later, her supervisors either did refuse or would have refused any accommodation she requested, and that she was terminated for this reason."); *Vasilenko v. City of Portland*, No. 3:22-CV-1203-JR, 2023 WL 3467232, at *6 (D. Or. Mar. 6, 2023) ("Plaintiff has alleged sufficient facts to allow the Court to draw an inference that the City has failed to reasonably accommodate her religious objection to the vaccine mandate.").

This Court likewise should find that Plaintiff has alleged sufficient facts to plead his failure to accommodate claim, and deny Defendant's motion to dismiss.

### 2. Plaintiff Plausibly Alleges A Sincerely Held Religious Objection To Defendant's COVID-19 Vaccination Policy.

Defendant's first argument in support of its motion to dismiss is that McCreary lacks a bona fide religious objection to the COVID-19 vaccination policy. ECF No. 17 at 6-10 (Defendant's Memorandum). In making this argument, Defendant fails to assume the truth of Plaintiff's factual allegations and fails to draw reasonable inferences in Plaintiff's favor.

When the Complaint, which incorporates McCreary's religious exemption letter (Exhibit G), is construed in Plaintiff's favor, as it must be on a motion to dismiss, McCreary has alleged the familiar Christian position that "your body is a temple of the Holy Spirit within you" (1 Corinthians 6:19-20), ECF No. 1-7 at 4, including that "my physical body is a gift that I need to take care of," ECF No. 1-7 at 3, that "I question everything that goes into my body," ECF No. 1-7 at 3, that he trusts in his God-given immune system, ECF No. 1-7 at 3, and that this is part of a comprehensive belief system "about how my God wants me to conduct myself, how

He wants me to live, and what He wants me to put into my body." ECF No. 1-7 at 1. Notably, nowhere in his letter does McCreary discuss the politics or science behind the COVID-19 vaccines. Rather, he states that "the vaccine and vaccine mandates are calling for me to compromise my faith and how God wants me to live." ECF No. 1-7 at 1. McCreary supported his letter with numerous citations to holy scripture. McCreary is a regular churchgoer, ECF No. 1 ¶ 32, and "[t]he Word of God is central in [his] family's life." ECF No. 1-7 at 1. Assuming the truth of these allegations and drawing inferences in Plaintiff's favor, McCreary's objection to Defendant's COVID-19 vaccination policy is plausibly – indeed, unquestionably – rooted in his *religious* beliefs.

Defendant's argument on this point – which engages in a highly selective and self-serving examination of McCreary's religious exemption letter – is fundamentally improper. On a motion to dismiss, the truth of Plaintiff's factual allegations must be assumed – and, on its face, McCreary's religious exemption letter expresses *religious* beliefs that conflict with Defendant's COVID-19 vaccination policy. These allegations satisfy Plaintiff's "fairly minimal" burden at this stage in the case. *Bolden-Hardge v. Office of California State Controller*, 63 F.4th 1215, 1223 (9th Cir. 2023) (reversing dismissal).

District courts in this circuit have recognized that similar objections to mandatory vaccination policies asserted by employees qualify as "religious" within the meaning of Title VII. *See, e.g.*, *Fisher v. Department of Fin. Inst.*, No. C22-5991-TSZ, 2023 WL 6389748, at *2 (W.D. Wash. Oct. 2, 2023) ("Fisher notified Defendant

9

that '[t]he Catholic Church teaches that [she] may be required to refuse a medical intervention, including a vaccination, if [her] informed conscience comes to this judgment' and that '[t]he Covid-19 vaccines conflict with [her] religious beliefs because [she] oppose[s] vaccines that interfere with the function of the human immune system which God created.'"); *Kather v. Asante Health Sys.*, No. 1:22-CV-01842-MC, 2023 WL 4865533, at *4 (D. Or. July 28, 2023) ("Hittinger alleges that receiving a COVID-19 vaccine would conflict with his 'sincerely held religious belief not to interfere with the function of the human immune system which God created.'"); *id.* at *5 ("[Osterberg] alleges that 'Satan is at work with the whole forceful COVID-19 mandate' and that she has the 'God-given right to refuse a vaccination that goes against everything [she] believe[s] in.'"); *Rolovich v. Washington State Univ.*, No. 2:22-CV-0319-TOR, 2023 WL 3733894, at *3 (E.D. Wash. May 30, 2023) ("Plaintiff's claim that his Catholic faith informed his decision not to receive the COVID-19 vaccine is sufficient at the pleading stage to meet the prima facie element that he has a bona fide religious belief.").

This Court likewise should find that Plaintiff has alleged a bona fide religious objection to Defendant's COVID-19 vaccination policy.

Defendant's reliance on *Fallon v. Mercy Catholic Medical Center*, 877 F.3d 487 (3d Cir. 2017), and *Winans v. Cox Automotive, Inc.*, No. 22-3826, 2023 WL 2975872 (E.D. Pa. Apr. 17, 2023), is misplaced. Besides being Third Circuit cases, they are not analogous to the case at bar.

The plaintiff in *Fallon*, which involved the flu vaccine, did not express any religious objections to the vaccine. Rather, he expressed personal views that the court summed up as "[g]enerally, he simply worries about the health effects of the flu vaccine, disbelieves the scientifically accepted view that it is harmless for most people, and wishes to avoid this vaccine." 877 F.3d at 492. There is no indication in the opinion that the plaintiff based his objections on any recognized religious traditions or teachings – which is precisely why the court examined his views to determine if they were "religious" in nature. Such an examination is neither necessary nor appropriate in the case at bar, however, because McCreary's objections to the COVID-19 vaccine are based expressly on his Christian faith. Similarly, the complaint in *Winans* "primarily details Plaintiff's purely scientific, personal, and medical objections to the vaccine, including his belief that the vaccine is ineffective and his concerns with its potential side effects," 2023 WL 29758732, at *4 – unlike McCreary's exemption letter, which focuses on the "body is the temple of the Holy Spirit" argument. ECF No. 1-7. Notably, the plaintiff in *Winans* was given leave to file an amended complaint better articulating his religious beliefs, which withstood a subsequent motion to dismiss. *See* 2023 WL 4353149 (E.D. Pa. July 5, 2023). Neither of these cases is persuasive authority.

Significantly, the meaning of "religion" under Title VII is "broad and intentionally hands-off," *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 452 (7th Cir. 2013), and "leaves little room for a party to challenge the religious nature of an employee's professed beliefs," *EEOC v. Union Independiente de la Autoridad*

11

*de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002). As the EEOC observes in its guidelines: "In most cases whether or not a practice or belief is religious is not at issue." 29 C.F.R. § 1605.1. These guidelines flow from the deference with which the Supreme Court has assessed religious beliefs for more than fifty years.

In its seminal dissertation on the meaning of "religious belief" in *United States v. Seeger*, 380 U.S. 163 (1965) (conscientious objector case), the Supreme Court explained: "In such an intensely personal area, of course, the claim of the registrant that his belief is an essential part of a religious faith must be given great weight." *Id.* at 184. Furthermore, "[t]he validity of what he believes cannot be questioned." *Id.* at 184. "Local boards and courts . . . are not free to reject beliefs because they consider them 'incomprehensible.'" *Id.* at 185. Rather, "[t]heir task is to decide whether the beliefs professed by the registrant are sincerely held and whether they are, in his own scheme of things, religious." *Id.* This deferential posture towards a person's professed religious beliefs was underscored by the Supreme Court in *Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707, 715 (1981):

> Courts should not undertake to dissect religious beliefs because the believer admits that he is 'struggling' with his position or because his beliefs are not articulated with the clarity and precision that a more sophisticated person might employ.

In its motion to dismiss, Defendant invites the Court to "dissect" McCreary's religious exemption letter and to draw inferences against Plaintiff where the wording of the letter might support a non-religious interpretation of McCreary's

12

objections to the COVID-19 vaccines. This is plainly improper. The Ninth Circuit recently explained, in a Title VII reasonable accommodation case, that "we do not interrogate the reasonableness of [the plaintiff's] beliefs and instead focus our inquiry on whether she has alleged an actual conflict." *Bolden-Hardge*, 63 F.4th at 1223. Here, McCreary has alleged an actual conflict between his religious beliefs and NVSC's mandatory vaccination policy. Defendant will have an opportunity to argue the validity or sincerity of Plaintiff's religious beliefs later, but not on a motion to dismiss. *See, e.g.*, *Ahmann v. Washington State Dept. of Trans.*, No. 2:23-CV-0140-TOR, 2023 WL 4847336, at *3 (E.D. Wash. July 28, 2023) ("At the pleading stage, Mr. Ahmann's allegations that he had a sincerely held religious belief (and so claimed on the Religious Exemption form) are taken as true. Mr. Ahmann has sufficiently stated a failure to accommodate religion claim. WSDOT's arguments are more appropriate for a determination on the merits, at trial or on summary judgment."); *Langer v. Hartland Bd. of Educ.*, No. 3:22-CV-01459(JAM), 2023 WL 6140792, at *6 (D. Conn. Sept. 20, 2023) ("[D]oubts at this time about Langer's articulation of her religious belief and how it conflicts with the testing requirement do not warrant dismissal of her complaint at the pleadings stage.")

In sum, Plaintiff plausibly alleges a bona fide religious objection to Defendant's COVID-19 vaccination policy. Defendant's argument on this point lacks merit and should be rejected.

### 3. Defendant Cannot Establish Its Undue Hardship Defense As A Matter Of Law.

Defendant's next argument in support of its motion to dismiss is that "the Supreme Court of Nevada could not accommodate McCreary's request without undue hardship." ECF No. 17 at 16; *see generally id.* at 10-16. This argument also lacks merit and should be rejected.

In *Groff v. DeJoy*, the Supreme Court explained that "undue hardship" under Title VII means "a burden [that] is substantial in the overall context of an employer's business." 600 U.S. at 468; *id.* at 470 ("an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business"). In *Groff*, the Supreme Court rejected the "more than de minimis" standard previously applied by lower courts as an erroneous interpretation of the Court's decision in *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977). Contrary to Defendant's position in its motion, ECF No. 17 at 11-12 & n.8, the *Groff* decision is not "retroactive legislation," but judicial explication of previously existing law, which applies to every case thereafter. *See Harper v. Virginia Dept. of Tax.*, 509 U.S. 86, 90 (1993) ("this Court's application of a rule of federal law to the parties before the Court requires every court to give retroactive effect to that decision"). Accordingly, the "more than de minimis" standard does not apply to the case at bar.

Determining whether accommodating an employee's religious beliefs and practices would constitute an undue hardship requires a "fact-specific inquiry." *Groff*, 600 U.S. at 468; *Opuku-Boateng v. State of California*, 95 F.3d 1461, 1468

14

(9th Cir. 1996) ("Whether a proposed accommodation would cause an undue hardship must be determined in the particular factual context of the case."). "[C]ourts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of [an] employer." *Groff*, 600 U.S. at 470-71 (internal quotation marks and citation omitted). Furthermore, "[a] claim of undue hardship cannot be supported by merely conceivable or hypothetical hardships; instead, it must be supported by proof of actual imposition on coworkers or disruption of the work routine." *EEOC v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 615 (9th Cir. 1988) (internal quotation marks and citation omitted); *Rolovich*, 2023 WL 3733894, at *4 ("The assertion of an undue hardship may not be premised on hypothetical or speculative hardships; there must be actual imposition or disruption.") (citation omitted).

Importantly, "[u]ndue hardship is an affirmative defense, and accordingly dismissal on that ground is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint or in any judicially noticeable materials." *Bolden-Hardge*, 63 F.4th at 1224-25 (internal quotation marks and citation omitted). Defendant cannot meet this high standard here.

First, nothing in the Complaint provides an "obvious bar to securing relief." Plaintiff alleges:

> 70.  At all relevant times, court employees were required to follow extensive COVID-19 safety precautions, including: regular and proper hand washing, respiratory etiquette, wearing masks, social distancing, and video or telephone conferencing. In addition, unvaccinated employees were required to

undergo weekly COVID-19 testing and complete a daily health screening questionnaire. All of these precautions were deemed adequate to mitigate the risk of catching or transmitting COVID-19.

71. At all relevant times, McCreary conscientiously followed applicable COVID-19 safety protocols, and he would have continued to do so if given an exemption. As he stated in his letter requesting a religious exemption: "I am more than willing to continue to wear a mask, get tested weekly, even if it is at my own expense, continue to social distance, frequently wash my hands, and anything else requested of me along those lines."

72. It would not have caused an undue hardship to allow McCreary to continue to follow these or similar precautions in lieu of the COVID-19 vaccine.

ECF No. 1 at ¶¶ 70-72.

Furthermore, while McCreary's request for a religious exemption was pending, he was allowed to continue working full-time. ECF No. 1 ¶ 44. Even after being informed that the court would not accept religious exemptions, McCreary was instructed "[u]ntil you are fully vaccinated, please continue to adhere to the requirements of weekly testing for COVID-19, daily health screenings when entering court facilities, wearing a mask and social distancing." ECF No. 1 ¶ 50.

Accordingly, the allegations in the Complaint, which are presumed to be true, along with reasonable inferences drawn in Plaintiff's favor, do not support a finding of undue hardship as a matter of law; on the contrary, they plausibly allege that McCreary could have continued working safely without being vaccinated.

Defendant argues that McCreary could not have been accommodated through a remote work arrangement, ECF No. 17 at 14, but this argument is irrelevant because McCreary was not asking to work remotely.

16

Defendant next argues that NVSC's rigorous non-vaccine protocols – which were adopted and required by Defendant – "trivialize the increased risk of transmission due to the incubation period for COVID-19" and "[t]hat fact in conjunction with the unknown vaccination status of non-Supreme Court of Nevada staff frequenting the courthouse demonstrates that the burden was clearly undue." ECF No. 17 at 15. In essence, Defendant argues that it would have been *unsafe as a matter of law* to allow McCreary to work without being vaccinated while following other prescribed health and safety protocols.

Nothing in the Complaint supports this argument.

Consequently, Defendant cites several reports from various public health authorities regarding COVID-19 infections. ECF No. 17 at 15. These reports are irrelevant to the case at bar, however, because they do not address the effectiveness of NVSC's rigorous non-vaccine protocols for preventing the spread of COVID-19 in the workplace. *See Groff*, 600 U.S. at 470 ("an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of *its particular business*") (italics added). To the extent that Defendant is now denying that its own protocols helped prevent the spread of COVID-19, this is a disputed issue of material fact that cannot be resolved on a motion to dismiss.

District courts in this circuit have repeatedly declined to find at the motion to dismiss stage that unvaccinated employees pose an unreasonable safety risk as a matter of law. *See, e.g.*, *Zimmerman v. PeaceHealth*, No. 3:22-CV-05960, 2023 WL

17

7413650, at *9 (W.D. Wash. Nov. 9, 2023) ("The Court is not persuaded that, as a matter of law, this fact-specific inquiry is satisfied by pointing to the scientific consensus that justified vaccine mandates *with religious exemptions* to prove in every circumstances that any religious accommodation beyond indefinite unpaid leave was an undue hardship.") (emphasis in original); *MacDonald v. Oregon Health & Science Univ.*, No. 3:22-CV-01942-IM, 2023 WL 5529959, at *7 (D. Or. Aug. 28, 2023) ("Accordingly, this Court finds that, at this stage, it is unable to properly consider extrinsic evidence on which Defendants rely to show either that there were no other viable accommodations to Plaintiff's vaccination, or that any accommodations would have created an undue hardship consistent with *Groff*."); *Johnson v. St. Charles Health Sys., Inc.*, No. 6:23-CV-00070-MK, 2023 WL 5155591, at *3 (D. Or. July 21, 2023) ("Here, there is nothing in the record thus far to show that allowing Plaintiff to adhere to her proposed accommodations – allowing Plaintiff to remain unvaccinated and engaging instead in frequent testing and using additional or enhanced protective equipment – while continuing to work as a relief nurse would constitute an undue hardship by resulting in substantial increased costs in relating to the conduct of Defendant's business."); *Rolovich*, 2023 WL 3733894, at *4 ("While these claims of undue hardship may be supported by evidence not presently before the Court, they are insufficient on their own to support a finding that Plaintiff's accommodation would have imposed an undue hardship.").

This Court likewise should find that Defendant cannot establish its undue hardship defense as a matter of law.

Defendant's reliance on *O'Hailpin v. Hawaiian Airlines, Inc.*, 583 F. Supp.3d 1294 (D. Haw. 2022), is misplaced. *O'Hailpin* was decided at the preliminary injunction stage, not the motion to dismiss stage, which enabled the court to weigh the evidence in support of the party's respective positions. The district court found that the plaintiffs did not establish a likelihood of irreparable harm, *id.* at 1307, and failed to exhaust their administrative remedies, *id.* at 1309. The court then noted: "Having already determined that Plaintiffs are unlikely to succeed on the merits for failure to exhaust, the Court need not analyze the Title VII and ADA claims." *Id.* Accordingly, the court's subsequent discussion of the undue hardship defense was dicta. *Id.* at 1309-10. To the extent the court's discussion was not dicta, it was decided under the no longer applicable "more than de minimis" standard, and was based on the particular factual circumstances relating to commercial air travel. *See id.* at 1310 (referring to "increased risk that unvaccinated employees in close quarters pose to other employees and passengers" and "difficulty of scheduling unvaccinated flight crew on international flights"). These unique factual circumstances do not apply here.

Underscoring that there is no "one size fits all" approach to the question whether unvaccinated employees pose an unreasonable safety risk, it is worth noting that the New York State Unified Court System granted *more than 500* religious exemptions and "[t]hose who were granted exemptions were required to

comply with alternative pandemic protective measures, such as masking, testing, and isolation." *See Ventresca-Cohen v. DiFiore*, 177 N.Y.S.3d 853, 858, 77 Misc.3d 652, 657 (Albany Supr. Oct. 26, 2022). Unlike the airline in *O'Hailpin*, the New York state court system is directly analogous to the Nevada Supreme Court. During the pandemic, COVID-19 was not less infectious or less dangerous in New York than in Nevada. If the New York state court system was able to allow hundreds of unvaccinated employees to remain on the job, surely Defendant cannot prove at this early stage in the case that it was unable to accommodate McCreary.

In sum, Defendant cannot establish its affirmative defense of undue hardship as a matter of law. Defendant's argument on this point lacks merit and should be rejected.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss pursuant to FRCP 12(b)(6) should be DENIED.

                                        Respectfully submitted,

                                        /s/ *Steven M. Warshawsky*

By: _____

                                        Steven M. Warshawsky, *Pro Hac Vice*
                                        WARSHAWSKY LAW FIRM

                                        Lee I. Iglody, Bar No. 7757
                                        IGLODY LAW PLLC

                                        *Attorneys for Plaintiff Michael McCreary*

Dated:   November 20, 2023